# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLAYTON SHACKELFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-147-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Clayton Shackelford requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-three years old at the time of the administrative hearing (Tr. 181). He has a high school education, vocational training as a machinist, and has worked as a production supervisor, CNC machinist, and plant machinist (Tr. 85, 203). The claimant alleges he has been unable to work since April 3, 2014, due to degenerative disc disease, chronic leg pain, and gastroesophageal reflux disease (Tr. 202).

## Procedural History

On April 29, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 181-84). His application was denied. ALJ Deborah Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 12, 2016 (Tr. 42-52). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and frequent, but not constant, handling, fingering, and feeling (Tr. 46). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could

perform in the national economy, *e. g.*, touch up screener/circuit board assembler, food and beverage order clerk, and optical polisher (Tr. 51-52).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. Ahmer Hussain. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of cervicobrachial syndrome, degenerative disc disease, and obesity, and the non-severe impairments of generalized anxiety disorder and major depressive disorder (Tr. 44-45). The relevant medical record indicates that the claimant established care at Advanced Interventional Pain & Diagnostics on April 2, 2013 (Tr. 268-70). Dr. John Swicegood diagnosed the claimant with cervicobrachial syndrome, displacement of cervical intervertebral disc without myelopathy, displacement of thoracic intervertebral disc without myelopathy, and spinal enthesopathy, and administered a cervical epidural steroid injection (Tr. 270-71). At a follow-up appointment on May 8, 2013, the claimant reported that the injection provided seventy-five percent relief for almost two weeks, and a second injection was administered (Tr. 273-76).

A May 2013 thoracic spine MRI revealed a left paracentral disc protrusion that contacts and indents the left anterior aspect of the cord and narrows the left lateral recess at T7-8, and right paracentral disc protrusions that contact the right anterior aspect of the cord and cause right lateral recess narrowing at T8-9 and T9-10 (Tr. 291). A May 2013

-4-

cervical spine MRI revealed a disc bulge more prominent to the left of midline with left foraminal narrowing at C6-7, and slight disc bulges without spinal stenosis at C4-5 and C5-6 (Tr. 292).

Dr. Ronald Schatzman performed a consultative examination of the claimant on August 6, 2014 (Tr. 297-304). He observed that the claimant was holding himself quite rigidly, was unwilling to turn his head to the side or raise his arms above his head, and was quite dramatic about his severe pain and how much he wanted to go back to work (Tr. 299, 302-03). He also observed that the claimant walked slowly with a cane, his knees flexed, and his body bent slightly forward, but moved fairly well when the examination concluded and he put his shoes on (Tr. 302). On physical examination, Dr. Schatzman found the claimant's elbows, wrists, and hands were within normal limits; his cervical spine and thoracic spine were non-tender with full range of motion; and his lumbosacral spine was non-tender with diminished range of motion (Tr. 304). Dr. Schatzman assessed the claimant with neck and back pain of an undetermined etiology, hypertension, and tobacco abuse (Tr. 304).

A September 2015 cervical spine MRI revealed mild broad disc bulging with some early right-sided uncovertebral spur formation at C3-4; mild broad disc bulging, mild bilateral uncovertebral spurring, and borderline central canal dimensions at C4-5; and mild broad disc bulging and mild bilateral uncovertebral spurring at C5-6 (Tr. 310).

The claimant presented to Dr. James Deneke, a rheumatologist, on October 30, 2015 (Tr. 328-30). Dr. Deneke observed that the claimant's responses to examination seemed "somewhat exaggerated." (Tr. 328). Dr. Deneke reviewed some of the claimant's prior

imaging studies, including a June 2015 lumbar spine MRI that is not contained in the record (Tr. 329). He indicated that this MRI described internal derangement and posterior annular tear at L3-4 and L4-5, small central protrusions at L5-S1, chronic asymmetric disk degeneration, and annular bulge (Tr. 329). Cervical spine and thoracic spine x-rays taken that day revealed minimal degenerative changes (Tr. 329). Dr. Deneke assessed the claimant with degenerative disc disease of the spine by history without obvious nerve deficits or bony injury, and chronic pain status post motor vehicle accident (Tr. 329).

Between November 2015 and January 2016, Dr. Hussain managed the claimant's medication for cervicalgia, chronic pain due to trauma, generalized anxiety disorder, low back pain, and major depressive disorder (Tr. 335-51). Dr. Hussain noted the claimant looked uncomfortable, ambulated with a limp and cane, had lumbar pain with forward flexion, had decreased range of motion in his left hip, had positive straight leg raises, and had a positive Patrick's sign at each of these appointments (Tr. 334-35, 338-37, 343-44, 347-48). On December 7, 2015, Dr. Hussain completed a form titled "Residual Functional Capacity Questionnaire," and stated that he first began treating the claimant on April 13, 2015 (Tr. 332). He indicated that the claimant's diagnoses included lumbago, cervicalgia, internal derangement, and annular tear, and that such diagnoses were supported by the June 2015 lumbar spine MRI that revealed mild disc degeneration at L4-5, and internal derangement and posterior annular tear at L3-4 and L4-5 (Tr. 332). Dr. Hussain opined that the claimant could sit for fifteen minutes at a time for a total of three or four hours, stand for ten minutes at a time for a total of two or three hours, walk less than two hours, and could never lift and carry (Tr. 332-33). He indicated that the claimant would need to

sit in a recliner or lie down for two hours each day, required an assistive device to stand/walk, and would need to take unscheduled breaks or periods of "walking around" every two hours for at least thirty minutes (Tr. 332). Additionally, he indicated that in an eight-hour workday, the claimant could use his hands for grasping, turning, and twisting forty percent of the time; his fingers for fine manipulation sixty-five percent of the time; and his arms for reaching seventy-five percent of the time (Tr. 333). Dr. Hussain opined that the claimant's productivity level compared to a healthy individual was eighty-five percent, and that he would be absent from work more than four times per month due to his impairments or treatments (Tr. 333).

The medical opinions of treating physicians such as Dr. Hussain are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, she is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it

must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In her written opinion, the ALJ summarized the claimant's testimony and the medical evidence. The ALJ assigned little weight to Dr. Hussain's opinion because: (i) his extreme limitations were not supported by his own treatment notes, which included identical physical examination findings at each visit; (ii) he did not use an approved form, and as such, the percentages given were not defined; (iii) the June 2015 lumbar spine MRI he referenced as support showed only mild disc degeneration; and (iv) an RFC assessment is an issue that is reserved to the Commissioner (Tr. 49). She then gave the state agency physicians' opinion that the claimant could perform sedentary work with occasional postural limitations significant weight, finding their opinions were well supported by and largely consistent with the medical record as a whole (Tr. 51).

The Court finds the ALJ failed to properly analyze the treating physician opinion by Dr. Hussain in accordance with the standards set forth in *Langley* and *Watkins*. First and foremost, although the ALJ *did* reference the correct analysis at the beginning of step four, she wholly to failed to discuss (or even mention) any of the applicable factors when analyzing the opinion. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. This analysis was particularly important here because Dr. Hussain was the *only* treating physician in the record who opined as to

must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In her written opinion, the ALJ summarized the claimant's testimony and the medical evidence. The ALJ assigned little weight to Dr. Hussain's opinion because: (i) his extreme limitations were not supported by his own treatment notes, which included identical physical examination findings at each visit; (ii) he did not use an approved form, and as such, the percentages given were not defined; (iii) the June 2015 lumbar spine MRI he referenced as support showed only mild disc degeneration; and (iv) an RFC assessment is an issue that is reserved to the Commissioner (Tr. 49). She then gave the state agency physicians' opinion that the claimant could perform sedentary work with occasional postural limitations significant weight, finding their opinions were well supported by and largely consistent with the medical record as a whole (Tr. 51).

The Court finds the ALJ failed to properly analyze the treating physician opinion by Dr. Hussain in accordance with the standards set forth in *Langley* and *Watkins*. First and foremost, although the ALJ *did* reference the correct analysis at the beginning of step four, she wholly to failed to discuss (or even mention) any of the applicable factors when analyzing the opinion. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. This analysis was particularly important here because Dr. Hussain was the *only* treating physician in the record who opined as to

any specific limitations.

Furthermore, the ALJ found Dr. Hussain's opinion was not entitled to controlling weight or special significance because it amounted to an RFC, which is a determination reserved to the Commissioner (Tr. 49). It is true that the determination of the claimant's RFC, and ultimately his ability to work, are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled . . . Although we consider opinions from medical sources . . . your residual functional capacity (see §§ 404.1545 and 404.1546) or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."). But it would appear that Dr. Hussain simply opined as to the claimant's functional limitations precisely as anticipated by 20 C.F.R. § 404.1527(d). And even if Dr. Hussain had ventured into the claimant's RFC or his ability to work, the ALJ could not disregard such opinions coming from a treating physician. *See, e.g., Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) (" '[T]he [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.' "), *quoting* Soc. Sec. Rul. 96–5p, 1996 WL 374183, at *3.

Because the ALJ failed to properly evaluate the opinion of treating physician Dr. Hussain, the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any,

and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**